M. Danton Richardson (SBN 141709)
[Email: drichardson@jwflawltd.com]
John W. Fagerholm (SBN 213852)
[Email: jfagerholm@jwflawltd.com]
Nicole E. Nemeth (SBN 290317)
[Email: nnemeth@jwflawltd.com]
**LAW OFFICES OF JOHN W. FAGERHOLM, LTD**
611 North Brand Suite 1300
Glendale, CA 91203
Tel: (323) 289-2260 | Fax: (323) 642-5441

Attorneys for Plaintiff, DEALERSGEAR

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DEALERSGEAR, a California Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>CREATIVE PACKAGE MCKAHAN, a California Corporation; HERVE YVES COMEAU, an individual; DAWN MCKAHAN, an individual; MICHAEL MCKAHAN, an individual; AIDAN HUSAIN-KENNAN, an individual; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>(1) **VIOLATION OF RICO, 18 U.S.C. §1962 ET SEQ.;**<br>(2) **RICO CONSPIRACY, 18 U.S.C. §1962(D);**<br>(3) **THEFT OF TRADE SECRETS, 18 U.S.C. §1832;**<br>(4) **COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. §1030(A);**<br>(5) **FRAUD;**<br>(6) **MISAPPROPRIATION OF TRADE SECRETS (CALIFORNIA CIVIL CODE § 3426 ET SEQ.);**<br>(7) **BREACH OF DUTY OF LOYALTY;**<br>(8) **BREACH OF CONTRACT;**<br>(9) **INTENTIONAL INTERFERENCE WITH** |

1
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**PROSPECTIVE ECONOMIC ADVANTAGE;**

**(10) VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17200 (UNFAIR COMPETITION LAW**

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

# INTRODUCTION

1. Plaintiff DEALERSGEAR ("Plaintiff") by and through undersigned attorneys, brings this action against Defendants CREATIVE PACKAGE MCKAHAN ("CPM"); HERVE YVES COMEAU ("Comeau") an individual; DAWN MCKAHAN, an individual; MICHAEL MCKAHAN, an individual; AIDAN HUSAIN-KENNAN ("Kennan"), an individual; and DOES 1-10 for engaging in a calculated scheme to defraud, misappropriate trade secrets and confidential business information, destroy Plaintiff's business and unlawfully divert customers from Plaintiff to a rival operation controlled by Defendants.

2. Plaintiff is an established digital marketing company serving the automotive sector.

3. CPM is a print marketing company that initially partnered with Plaintiff to help CPM offer digital marketing services along with their print services.

4. Comeau was Plaintiff's CFO and Digital Marketing Director and Plaintiff's trusted employee prior to joining CPM.

5. Defendants Dawn McKahan and Michael McKahan are officers and principals of CPM who worked closely with Comeau to provide Plaintiff's digital marketing service to CPM's clients until the Defendants orchestrated the misappropriation of Plaintiff's proprietary assets.

6. Defendant Kennan worked as a Digital Coordinator for Plaintiff until he contributed to the conspiracy by passing on Plaintiff's proprietary data to CPM then permanently deleting the stolen data from Plaintiff's server preventing Plaintiff from use of its own data. Thereafter, Defendant Kennan resigned from his position with Plaintiff and took a job with CPM.

7. While employed by Plaintiff, Comeau was the direct liaison with CPM and Comeau conspired with CPM to misappropriate Plaintiff's client data, pricing structures, and proprietary marketing tools, divert business relationships and revenue streams to CPM and then join CPM.

8. Defendant Dawn McKahan worked directly with Comeau to facilitate the misappropriation of Plaintiff's confidential information and intellectual property.

9. Defendant Michael McKahan participated in the misappropriation of Plaintiff's confidential information and also terminated Plaintiff's contract with 15 dealerships with an outstanding balance which is yet to be paid.

10. Defendants' coordinated conduct constitutes a pattern of racketeering activity under 18 U.S.C. §1961 et seq., including multiple acts of wire fraud and theft of trade secrets.

11. Defendants' acts were intentional, malicious, and fraudulent, resulting in devastating financial harm to Plaintiff, the destruction of client relationships, and severe reputational injury. Plaintiff seeks damages, injunctive relief, and punitive damages for Defendants' egregious conduct.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction under 18 U.S.C. §1964(c) and 28 U.S.C. §1331.

13. The Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a), as they form part of the same case or controversy under Article III of the United States Constitution.

14. Venue is proper in this district pursuant to 28 U.S.C. §1391 because the events giving rise to this action occurred in this district.

## PARTIES

15. Plaintiff DealersGear is a California corporation with its principal place of business in Irvine, California.

16. Defendant Creative Package McKahan is a California corporation with its principal place of business in Foothill Ranch, California.

17. Defendant Herve Yves Comeau is an individual and resident of California. At all relevant times, he was employed by DealersGear.

18. Defendant Dawn McKahan is an individual residing in California and a principal of CPM. At all relevant times, she worked in close coordination with Herve Comeau to facilitate the misappropriation of Plaintiff's confidential information and client relationships.

19. Defendant Michael McKahan is an individual residing in California and a principal of Creative Package McKahan. At all relevant times, he worked in close coordination with Herve Comeau to facilitate the misappropriation of Plaintiff's confidential information and client relationships.

20. Defendant Aidan Husain-Kennan is an individual residing in California. He was employed by Plaintiff and, prior to his departure, deleted key proprietary files and later joined the efforts of the co-defendants in diverting business and clients.

21. Plaintiff is informed and believes that DOES 1 through 10 aided and abetted the scheme described herein and will amend this complaint to allege their names when known.

## FACTUAL ALLEGATIONS

22. Plaintiff DealersGear is a software and marketing company.

23. The company has spent years developing a unique and proprietary system of online marketing tools, processes, and data analytics to service its clients efficiently and with measurable results.

24. To perform its services, Plaintiff developed proprietary strategies, client relationship management systems, marketing templates, pricing structures, site-specific design frameworks, and business methods, all of which constitute protectable trade secrets under federal and California law.

25. Plaintiff and CPM entered into a business relationship in which Plaintiff would offer online digital marketing solutions to dealership clients referred by CPM, which historically only provided print media services until entering into an agreement with Plaintiff. This arrangement required significant trust and collaboration between the parties and was intended to be mutually beneficial.

26. In or around January 2020, Plaintiff hired Defendant Herve Comeau as an employee. Comeau was later promoted to the position of Chief Operating Officer. He was entrusted with access to nearly all aspects of Plaintiff's business operations, including its client portfolios, internal project timelines, marketing toolkits, and pricing strategies.

27. As a condition of employment, Comeau executed a Confidentiality, Non-Solicitation, and Work for Hire Agreement with Plaintiff. This agreement specifically prohibited the disclosure of trade secrets and confidential information, and barred Comeau from engaging in competing activities or soliciting DealersGear's clients.

28. Plaintiff is informed and believes and based thereon alleges that while still employed by Plaintiff, and without Plaintiff's knowledge, Comeau began working behind the scenes with virtual design contractors and outside vendors in mid-2022 to replicate Plaintiff's systems.

29. Plaintiff is informed and believes and based thereon alleges that Comeau also initiated contact with CPM leadership including Defendants Dawn and Michael McKahan about transitioning the marketing services entirely to CPM using the proprietary strategies and information developed at DealersGear.

30. Plaintiff is informed and believes and based thereon alleges that during his employment with Plaintiff, Comeau accepted unauthorized compensation from parties affiliated with CPM in exchange for services and insider information, in direct violation of his employment agreement and fiduciary obligations. These payments were undisclosed to Plaintiff and reflect a clear conflict of interest and commercial disloyalty.

31. Plaintiff is informed and believes and based thereon alleges that Dawn McKahan, a principal of CPM, directly collaborated with Comeau throughout his employment at DealersGear to facilitate the unlawful transfer and use of proprietary information and intellectual property. Dawn McKahan played a central role in executing the plan to misappropriate Plaintiff's internal systems, client deliverables,

6
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

and marketing strategies. She worked in close coordination with Comeau to replicate and deploy Plaintiff's business model through CPM's operations, all while concealing the source of the materials from clients and positioning CPM to take over Plaintiff's contracts. Her conduct demonstrates knowing and willful participation in a scheme to undermine and supplant DealersGear's business.

32. Michael McKahan, another principal of CPM, oversaw the transition of the dealership accounts and issued a formal termination letter on or about June 20, 2023, ending CPM's engagement with DealersGear for fifteen (15) dealership clients. These clients, including Airport Marina Ford, Cerritos Nissan, and South County Lexus, generated substantial monthly revenue for Plaintiff ranging from $2,500 to $7,000 per client.

33. Plaintiff is informed and believes and based thereon alleges that immediately following the termination, CPM continued servicing these clients using nearly identical marketing deliverables previously created by Plaintiff.

34. Defendant Aidan Husain-Kennan was employed by DealersGear as a design and production assistant. Prior to his resignation, he was observed accessing folders containing project archives and design files across DealersGear's shared Google Drive and Dropbox accounts. When prompted to return his company laptop, internal audits revealed that large volumes of folders had been wiped or deleted which included intellectual property owned by Plaintiff.

35. Kennan failed to offer any credible explanation for the deletions, and shortly thereafter began working with CPM. He was later discovered to be corresponding with the same third-party designers recruited by Comeau. Evidence suggests that he helped accelerate CPM's ability to "go live" with former Dealers Gear clients immediately after the transition.

36. Plaintiff is informed and believes and based thereon alleges that following their respective departures from DealersGear, Defendants Comeau and Kennan assisted CPM in launching near-identical marketing services using Plaintiff's

confidential materials and methodologies. This included replicating digital campaigns, email templates, and client-facing designs that had been previously developed and stored exclusively within Plaintiff's systems.

37. The stolen trade secrets—such as campaign frameworks, client pricing models, and SEO strategies—derive independent economic value from not being generally known to the public or competitors. Plaintiff took reasonable and consistent steps to safeguard this information, including the use of confidentiality agreements, password protections, internal data restrictions, and employee training on trade secret handling.

38. Plaintiff is informed and believes and based thereon alleges that all four individual defendants, Comeau, Dawn McKahan, Michael McKahan and Kennan acted with coordinated intent to cripple Plaintiff's ability to retain its clients and shift the ongoing revenues to CPM using stolen materials. Kennan's actions further aided and abetted this scheme.

39. Plaintiff is informed and believes and based thereon alleges that the misappropriation and client poaching began as early as 2021 and continued through at least Q3 2023. These acts were not isolated but part of a calculated, multi-phase plan to migrate business assets away from Plaintiff and rebrand them under CPM's control, without compensating Plaintiff or acknowledging the origin of the content.

40. In June 2023, CPM refused to remit payment on outstanding invoices totaling $16,500, despite multiple communications and demands. Plaintiff sent formal legal notices, asserting its contractual and intellectual property rights, but Defendants did not comply.

41. Plaintiff is informed and believes and based thereon alleges that defendants continue to benefit from the client accounts and assets they misappropriated.

42. Plaintiff remains irreparably harmed, having lost substantial goodwill, client trust, and long-term business value tied to relationships and systems that took

years to build.

## FIRST CAUSE OF ACTION

### (Violation of RICO, 18 U.S.C. §1962 ET SEQ)

43. Plaintiff is informed and believes and based thereon alleges that defendants Comeau, Dawn McKahan, Michael McKahan, Kennan, and CPM conducted or participated in the affairs of an enterprise through a pattern of racketeering activity, including wire fraud (18 U.S.C. §1341), theft of trade secrets (18 U.S.C. §1839), and fraud.

44. Plaintiff is informed and believes and based thereon alleges that each defendant engaged in specific predicate acts, including but not limited to Comeau's transmission of proprietary materials, Dawn and Michael McKahan's execution and implementation of a client takeover strategy, and Kennan's spoliation of digital evidence and assistance with the re-deployment of Plaintiff's services through CPM.

45. The racketeering acts caused injury to Plaintiff's business and property, including lost revenue, business relationships, and goodwill.

46. As a result of Defendants' RICO violations, Plaintiff is entitled to treble damages, costs, and attorney's fees under 18 U.S.C. §1964(c).

## SECOND CAUSE OF ACTION

### (RICO Conspiracy, 18 U.S.C. §1962(d))

47. Plaintiff incorporates by reference the allegations above as though fully set forth herein.

48. Plaintiff is informed and believes and based thereon alleges that defendants knowingly agreed to facilitate the operation of the enterprise through the above racketeering acts.

49. Plaintiff is informed and believes and based thereon alleges that each defendant took overt actions in furtherance of the conspiracy, including transferring proprietary data, deploying stolen marketing tools, deleting internal files, and executing client terminations that deprived Plaintiff of substantial revenue.

50. Plaintiff suffered injury as a direct result.

### THIRD CAUSE OF ACTION

### (Theft of Trade Secrets, 18 U.S.C. §1832)

51. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

52. Plaintiff is informed and believes and based thereon alleges that defendants Herve Comeau, Aidan Husain-Kennan, and Creative Package McKahan (CPM) knowingly and intentionally, and without authorization, stole, appropriated, and converted to their own use trade secrets belonging to Plaintiff, including but not limited to proprietary digital marketing strategies, SEO tools, client lists, pricing data, performance analytics, and internal campaign templates.

53. Plaintiff is informed and believes and based thereon alleges that while still employed by Plaintiff, Comeau used his position as Chief Operating Officer to access and misappropriate confidential systems and designs, and disclosed them to CPM, a competing enterprise, for personal and commercial gain. Plaintiff is also informed and believes and based thereon alleges that Comeau also received unauthorized payments from third parties in connection with this scheme.

54. Plaintiff is informed and believes and based thereon alleges that Kennan, in coordination with Comeau and CPM, deleted substantial volumes of proprietary content from Plaintiff's cloud storage, including Google Drive and Dropbox, and then assisted CPM in launching identical marketing services to Plaintiff's former clients.

55. Plaintiff is informed and believes and based thereon alleges that CPM knowingly received and utilized these stolen trade secrets to solicit and service over fifteen (15) dealership accounts, using Plaintiff's confidential methodologies and digital infrastructure.

56. The misappropriated information derived independent economic value from not being generally known to the public or competitors, and Plaintiff took reasonable steps to keep such information confidential, including confidentiality

agreements, restricted access, and internal data controls.

57. By knowingly engaging in the unauthorized taking and use of Plaintiff's trade secrets with the intent to convert them to the economic benefit of a competitor, Defendants violated 18 U.S.C. § 1832.

58. As a direct result of this theft, Plaintiff has suffered substantial economic harm and is entitled to damages, injunctive relief, and all remedies available under 18 U.S.C. § 1832.

## FOURTH CAUSE OF ACTION

### (Computer Fraud And Abuse Act, 18 U.S.C. §1030(A))

59. Plaintiff incorporates by reference the preceding allegations as though fully set forth herein.

60. Plaintiff is informed and believes and based thereon alleges that Defendants Comeau and Kennan knowingly accessed protected computers and cloud-based storage systems owned by Plaintiff, including shared Google Drive and Dropbox accounts, without authorization or by exceeding authorized access, and obtained, copied, or deleted information belonging to Plaintiff in violation of 18 U.S.C. § 1030(a)(2) and (a)(5).

61. Plaintiff is informed and believes and based thereon alleges that, specifically, Kennan accessed proprietary project folders, deleted critical company records prior to his departure, and transferred files to third-party collaborators associated with CPM

62. Plaintiff is informed and believes and based thereon alleges that Comeau, while serving as CFO, similarly used internal digital platforms to extract marketing templates and business intelligence which he later used to support CPM's operations

63. These acts caused loss to Plaintiff, including costs related to data recovery, forensic investigations, and remedial IT security measures, exceeding the $5,000 threshold under the act.

64. Plaintiff is entitled to compensatory damages, equitable relief, and other

remedies available under 18 U.S.C. § 1030(g).

## FIFTH CAUSE OF ACTION

### (Fraud)

65. Plaintiff incorporates by reference the allegations above as though fully set forth herein.

66. Plaintiff is informed and believes and based thereon alleges that Defendants Comeau, Dawn McKahan, and Michael McKahan knowingly made material misrepresentations to clients and misappropriated information under false pretenses. Plaintiff is further informed and believes and based thereon alleges that Comeau and Kennan falsely represented their ongoing loyalty while engaged in activities to undermine Plaintiff, as described above.

67. Plaintiff reasonably relied on the integrity of its employees and business partner to its detriment.

68. Defendants' conduct was fraudulent, oppressive, and malicious, entitling Plaintiff to compensatory and punitive damages.

## SIXTH CAUSE OF ACTION

### (Misappropriation of Trade Secrets – Cal. Civ. Code §3426 et seq)

69. Plaintiff incorporates by reference the allegations above as though fully set forth herein.

70. Plaintiff's client lists, pricing structures, marketing methodologies, business strategies, and internal systems are protectable trade secrets.

71. Plaintiff took reasonable measures to protect the confidentiality of its trade secrets, including requiring employees to sign confidentiality agreements and limiting access to sensitive data.

72. Plaintiff is informed and believes and based thereon alleges that

Comeau wrongfully disclosed and used Plaintiff's trade secrets without consent by sharing them with CPM. Dawn and Michael McKahan knowingly received and utilized these materials to provide services to Plaintiff's former clients. Plaintiff is further informed and believes and based thereon alleges that Kennan's deletion of proprietary content further facilitated the theft and concealment of Plaintiff's intellectual property.

73. As a direct result of Defendants' misappropriation, Plaintiff has suffered, and continues to suffer, substantial economic damages in an amount to be proven at trial.

74. Defendants' misappropriation was willful and malicious, entitling Plaintiff to punitive damages and attorney's fees.

## SEVENTH CAUSE OF ACTION

### (Breach of Duty of Loyalty)

75. Plaintiff incorporates by reference the allegations above as though fully set forth herein.

76. As employees of Plaintiff, Comeau and Kennan owed Plaintiff a fiduciary duty of loyalty.

77. Plaintiff is informed and believes and based thereon alleges that Comeau breached his duty by colluding with CPM to divert clients, while still employed. Kennan assisted the transition by deleting sensitive company files and supporting the transfer of business to CPM.

78. As a direct result, Plaintiff suffered substantial financial harm.

///

///

## EIGHT CAUSE OF ACTION

### (Breach of Contract)

79. Plaintiff incorporates by reference the allegations above as though fully set forth herein.

80. Plaintiff and Comeau entered into a valid, enforceable Confidentiality, Non Solicitation, and Work for Hire Agreement.

81. Plaintiff is informed and believes and based thereon alleges that Comeau breached the agreement by disclosing confidential information, soliciting Plaintiff's clients, and engaging in competition during and after his employment.

82. Kennan also entered into a valid and enforceable employment agreement with confidentiality provisions, which imposed obligations to preserve the integrity of Plaintiff's proprietary data and systems.

83. Plaintiff is informed and believes and based thereon alleges that Kennan breached his contractual obligations by deleting protected company files and later assisting in the use of Plaintiff's confidential information to benefit CPM.

84. Defendant CPM entered into a business arrangement and course of conduct with Plaintiff under which DealersGear provided online marketing services to dealership clients referred by CPM, in exchange for payment and mutual cooperation. The relationship was governed by an implied and/or express agreement, the terms of which included reasonable expectations of continuity, fair dealing, payment for services rendered, and confidentiality.

85. Plaintiff is informed and believes and based thereon alleges that CPM breached this agreement by soliciting Plaintiff's clients, failing to pay 16,500 in invoiced fees, and using Plaintiff's proprietary materials to continue

servicing the same clients under its own name.

86. Additionally, Plaintiff is informed and believes and based thereon alleges that CPM breached the covenant of good faith and fair dealing inherent in the parties' agreement by intentionally undermining Plaintiff's business, concealing its intent to transition the clients away, and allowing its principals to misuse confidential information for unfair competitive advantage.

87. As a proximate result of the foregoing breaches, Plaintiff suffered financial losses, including but not limited to lost business and lost goodwill.

88. Plaintiff has performed all conditions, covenants, and promises required on its part under the agreement.

## NINTH CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage)**

89. Plaintiff incorporates by reference the allegations above as though fully set forth herein.

90. Plaintiff had economic relationships with its clients, including but not limited to at least fifteen (15) automotive dealerships, that carried a probability of future economic benefit. These included ongoing digital marketing services, advertising campaigns, SEO management, and data reporting—all provided through monthly service agreements.

91. Plaintiff is informed and believes and based thereon alleges that Defendants Comeau, Dawn McKahan, Michael McKahan, Kennan, and CPM knew of these relationships and intentionally engaged in wrongful conduct aimed at disrupting them.

92. Plaintiff is informed and believes and based thereon alleges that Defendants' conduct included misappropriating Plaintiff's marketing materials, falsely representing to clients that services would remain uninterrupted through CPM, orchestrating a mass transition of client accounts using Plaintiff's stolen property, and erasing proprietary data to impede Plaintiff's ability to continue performance.

93. Plaintiff is informed and believes and based thereon alleges that these actions were not protected business conduct, they were independently wrongful, in violation of confidentiality agreements, statutory protections for trade secrets, and ethical duties of loyalty.

94. As a direct result of this intentional interference, Plaintiff lost long-standing client accounts, suffered reputational harm, and was deprived of substantial recurring revenue.

## TENTH CAUSE OF ACTION

**(Violation of Business and Professions Code § 17200 (Unfair Competition Law)**

95. Plaintiff incorporates by reference the allegations above as though fully set forth herein.

96. Plaintiff is informed and believes and based thereon alleges that Defendants engaged in unlawful, unfair, and fraudulent business practices by misappropriating confidential information, interfering with business relationships, and engaging in unfair solicitation practices.

97. Plaintiff is entitled to restitution, injunctive relief, and any other remedies permitted by law.

///

///

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff DealersGear. respectfully requests judgment against all Defendants, jointly and severally, as follows:

1. General and special damages according to proof, including lost revenue, client accounts, and goodwill;

2. Treble damages pursuant to 18 U.S.C. § 1964(c) for Defendants' violations of RICO;

3. Compensatory damages under 18 U.S.C. § 1832 for theft of trade secrets, including the value of misappropriated assets and loss of business expectancy;

4. Damages, injunctive relief, and other remedies as permitted under 18 U.S.C. § 1030(g) for unauthorized access and impairment of Plaintiff's computer systems;

5. Restitution and disgorgement of profits wrongfully obtained through unfair competition and misappropriation;

6. Punitive and exemplary damages for Defendants' fraud, malice, and willful misconduct;

7. Contractual damages including amounts owed under invoices and for breaches of express and implied agreements;

8. Permanent injunctive relief prohibiting Defendants from using or disseminating Plaintiff's confidential, proprietary, or trade secret information;

9. An accounting of all revenues earned from misappropriated materials or diverted client relationships;

10. Attorney's fees and costs incurred in prosecuting this action, including those recoverable under statute or contract;

11. Pre-judgment and post-judgment interest as permitted by law; and

12. Such other and further relief as the Court may deem just and proper.

13.

DATED: May 23, 2025          Respectfully submitted,

**The Law Offices of John W. Fagerholm, Ltd.**

By:_____
M. Danton Richardson, Esq.
John W. Fagerholm, Esq.
Nicole E. Nemeth, Esq.
Attorneys for Plaintiff,
DEALERS GEAR, INC.

**DEMAND FOR JURY TRIAL**

Plaintiff DEALERS GEAR, INC., hereby demands a trial by jury.

DATED: May 23, 2025   Respectfully submitted,

**The Law Offices of John W. Fagerholm, Ltd.**

By:_____
M. Danton Richardson, Esq.
John W. Fagerholm, Esq.
Nicole E. Nemeth, Esq.
Attorneys for Plaintiff,
DEALERS GEAR, INC.